May it please the court, counsel. My name is Shanoa Payne and I represent plaintiffs Lori and James Gibson. The issue before the court today is whether the district court erred in determining that defendant Owyhee Produce was not an indirect employer under Oregon's employer liability law because it lacked actual control as a matter of law over the method and manner of the risk reducing activity in this case. I'd like to focus my argument on discussing why summary judgment is precluded in this case under Spain v. Jones on the basis that there are questions of fact as to whether defendants should have provided fall protection in this case. There are two critical facts that determine that defendants should have provided fall protection in this case. Those facts are based on the expert opinion that plaintiff presented and that's at ER 109. The first fact is that the plaintiff testified that there was an industry standard for defendant to provide a tarping station for plaintiff to safely complete the risk the work in this case and the second is that that tarping station was the only safe method to prevent the risk-producing activity in this case. The first fact is the industry standard and that fact is particularly important because in Spain v. Jones the Court of Appeals stated that such an expert statement regarding industry standard suggests that the defendant rather than the direct employer is responsible for protecting against falls like plaintiffs and that fact in Spain v. Jones created a question of fact regarding who is responsible for providing fall protection. I guess though I mean if you're talking about actual control I don't understand what who cares what 99 out of a hundred other companies in the position of defendant are doing aren't you don't you have to focus on this particular defendant and it was clear that they were not in the business of providing any assistance to the person who was doing the tarping right so I think that when you look at who is responsible for providing fall protection and in a case where the risk-producing activity is working at height you have to look at who is responsible for preventing that working at height and when you're looking at creating a question of fact as to who is responsible you have to look at the only way of preventing that fall and in this case the direct employer and the and the plaintiff didn't have the ability to provide that that fall protection and the industry standard creates a question of fact because it presented evidence that the defendant was responsible for providing that fall protection and preventing that fall so even though the defendant didn't provide that fall protection here it presented a question of fact as to whether they were responsible for doing so and in Spain versus Jones that says that if you're responsible for doing so you have actual control over the risk-producing activity the other important fact here which is also found in the expert opinion is that a tarping station is the only safety equipment that would have prevented the fall in this case the district court held below that defendant did not have actual control in this case because plaintiff or the direct employer in this case could have brought along with him other safety equipment such as a ladder or scaffolding and that was error because there was no evidence in this case that any other safety equipment would have prevented the fall in this case isn't there evidence though that there's a different method of doing the tarping even without a tarping station that would have I guess I don't know if it would have eliminated the need to work at Heights but it certainly would have made it much less dangerous for your client no there's no evidence in the record the only evidence in the record is the experts opinion that says that a tarping station and not that is evidence or safety equipment such as an apparatus a tarping platform and that's station I think that's important to understand that it's it's physical physical equipment that has to be present on the site it's not something that you can carry with you there's no evidence of any other safety equipment that could be transported with you there's no evidence that a ladder would have prevented or scaffold would have prevented plaintiff from having to crawl on top of the load and move these tarps over the load and the problem with what made this activity dangerous was that the onions were loose and he had to crawl on top of this load and stand on the loose onions and move this tarp and so a ladder would not have prevented him from doing that but I thought there was testimony that instead of waiting until the entire truck is full of onions you tarp as you go along and that that substantially reduces the risk am I remembering that wrong actually there is testimony in this record that that's what they do sometimes but in this case they didn't do that they put the tarp on the back of the load in this case such that he wants the the load was fully loaded he got had to get on top of the load and move the tarp at that point so forklift to lift the tarp onto the truck after on top of the load after it had been loaded one of the defendant's employees put the tarp on top of the load for plaintiff and the placed it at the back of the load such that plaintiff had to get on top of the load after it had been fully loaded so defendant participated in that process it was at the back not towards the cab so he had to get clear to the back of the truck and lean down to where the tarp was and move it all the way to the front and that was a process that he had to do after it was fully loaded unlike other occasions where defendant will sometimes do it halfway through the loading process I think it's important to understand to that when plaintiff got the call about this project this particular job he was in Boise and his location where his employer is located is in Alabama so he gets this call in Boise and says you have a job in Nyssa Oregon he has to take this job he doesn't have the ability to go back to Alabama to get safety equipment he doesn't have the option of getting safety equipment in Boise that's not where his employer is located I think it's important to understand that he is really logistically unable to get the tarping station or the safety equipment that's necessary he yeah yeah no I understand that but let me just take you back to a point you made earlier about the Spain case because what I hear you saying is that basically if even if as a direct employer I guess I don't want to say employer you're not able under Oregon law to just to disclaim responsibility for certain tasks that I mean that's what your legal argument is here because I again thought of the actual control prong is meaning just that that you actually have to be able to direct the person in terms of how they're gonna do the details of the work here it's very clear that the defendant said the tarping part is not our responsibility we're gonna have nothing to do with that you you guys are basically the experts and figuring out how to do that safely that's not on us and you're saying that as a matter of law they can't do that because you know that's correct your honor I think Spain versus Jones really sets the standard here which is if you are the party that is responsible for providing the fall protection and the industry standard can set that standard where you are the party you are the only party that is responsible for providing that fall protection then you have actual control and that makes sense when the risk activity is working at height because if the risk if the risk is falling and you are and there's no other way to protect from that other than providing fall protection and you are the only party that can provide that fall protection then you necessarily have actual control over the risk you just tell the person we are exercising no control over this just to be clear it is all in your control and we have nothing to do with it you're just saying that that's not an indirect employer is permitted to do under under Spain correct it's it's important to understand that plaintiff here really is at the mercy of these produce facilities he he shows up to these facilities and he he waits to see what safety facilities there are he testified that a handful of times he has he has climbed on these before and has had no fall protection and in Spain the plaintiff testified to the same thing he said I didn't expect there to be fall protection I've shown up to many houses before and there was no fall protection and that did not sway the Court of Appeals that there was not a question of fact as to whether the defendant had a duty to provide fall protection in that case so there were similar facts in Spain as there are here and I think that unless the court has any further questions I'd like to reserve my time for rebuttal. Your client was required to apply the tarp, is that right? He was the defendant in this case there was a contract of Hall that required him to apply the tarp completely and uncover the front and rear nice weather and cover it from top to bottom and end to end completely and I think the important part of that is to cover it from top to bottom because that requires him to climb on top of the load of onions. Was there only one way to apply the tarp? I don't think there was only one way to apply the tarp but I do think that it did create the risk-producing activity and requiring him to climb on top of the load of onions. He couldn't have, as I understand the testimony, deposition testimony, he wasn't allowed to leave the yard until the tarp, is that correct? That's correct. The Ms. Hiddle testified that it was defendant's policy, this is at ER 92, to inspect the tarping of the load to make sure it was correct before it left the premises and she actually had to sign off on the contract of Hall that that had occurred before he was allowed to leave the property. When it left the yard she had to ensure that it was properly tied down or that it just covered the onions from? That it was to the specifications that I just mentioned. Okay. Do you want to save the balance of your time now? I do, thank you very much. Okay. Good morning, may it please the Court and counsel. I'm Kurt Peterson, I represent Owyhee Produce. I'll address initially the interpretation of Spain that Your Honor pointed out. The plaintiff would like Spain to hold that evidence of a standard of care in an industry means control under the ELL and that's not the holding of Spain. Although there is some, in my opinion, confusing language regarding that. The holding of Spain was that the trial court erred in its interpretation of what the work, the risk-producing activity was. That trial court said the plumber, his work is plumbing. The appellate court said no, he is required, he's been forced to go by on the second floor, go by this hole. And so the scope of work. Can you speak a little louder, please? Yes, sir. Thank you. And so the scope of work was broader than what the trial court said. So their holding was trial court, you need to go back and look at this from the perspective of his scope of work being walking by this hole. That was holding number one. Holding number two was simply who controls this fall protection of the is a question of fact. What plaintiff would like this Spain to represent is that when you have evidence of a standard of care or custom in the industry, then that equates control. And under the Woodbury three-part test, that is not, that's, that would essentially rewrite the employer liability law as it has been interpreted for years in Oregon. So I would like to point that out initially about Spain. The also I can mention that it's plaintiff's burden. The real issue in this case is what does the evidence say? It is plaintiff's burden once, once the defense moves for summary judgment and brings, presents these issues to the court. Celotex says that the plaintiffs have to come forward with specific evidence that either create a question of fact or dispute those facts. The trial court, Judge that I need to be concerned about, the agreement was no, there are no issues of fact. And so. The question is for the, for the court though, is there a genuine factual dispute here? That's always the question of summary judgment. Okay. I agree with that. Are you saying that, that Spain versus Jones changed nothing? Yes, Your Honor. I'm saying it changed nothing. I'm saying Spain v. Jones was in line with cases such as Boothby and Woodbury. And I can explain why. If you'd like. Yeah, go ahead. Okay. So in, in, in Boothby, the issue was this. The trial court in Boothby said, there was a, it was a logging situation where Boothby plaintiff was doing a job that was unconnected with a log loader that was operated by another contractor, another employer. There was an accident or there was a safety problem with that log loader. And Boothby was in the area and was injured. The issue in that case was twofold. One, the trial court again interpreted, incorrectly interpreted Boothby's scope of work too narrowly. Said, no, he's doing this work, that's his scope. And the defendant didn't control the manner or means, just like the plumbing on the second floor in Spain. The court said, no, you're going to require this person to be in a dangerous situation where there's a log loader. That's part of his work. But the important thing about Boothby is the court also said, look, there's, there's obviously evidence in, that has been provided to the court that this was a dangerous activity, that it was part of Boothby's scope of work. And there's ample evidence, the court said, that this work could have been done more safely. But the court said, it doesn't matter whether this is the most dangerous work in the world. What matters is, does the defendant exercise the control of the manner and means? And he said, and the interpreted Spain, because Spain simply said, there is a question of fact that was not determined and sent it back down. So, Your Honor, with all due respect, I don't think that Spain changed anything. I don't think it was a seminal case that altered the way the employer liability law is going to be interpreted in Oregon. But, I, no, go ahead. Your, your turn. I mean, why isn't the, the factual situation we have before us very similar to the ones you just described? That stands here. Okay. Why isn't the factual situation we have before us similar to what you've just described in the sense that the plaintiff here, there's basically an unavoidable hazard that he has to encounter given the way that your client has sort of arranged the work situation, right? Yeah, that's an excellent question. I'll, I'll tell you why that's not the case. The cases are distinguishable. This case is not like Spain or like Boothby. This case is like Brown v. Boise Cascade. Brown v. Boise Cascade, Boise Cascade wants their room painted. They hire a contractor to do it. Boise Cascade says, I want an end product. I want a painted room. And leaves it, like in this case, leaves it completely up to the contractor about how that is done. Okay? The contractor determines that they're going to use ladders. He falls from the ladder and is injured. And the court in Brown said there was no control over the manner and means. They didn't, they didn't require him to be up on that ladder. That was up to the, his employer about how to determine. It could have used any other method. Now, what's important in this case is plaintiff would like his, her expert affidavit to signify that there is no other way to do this work. Either it's a tarping station, the safe way, or it is him alone, without any other possible equipment, getting up on these, on the loads and tarping the load. Judge Simon spotted this immediately. And that's why he spent so much time trying to draw out a plaintiff. Tell me where is your evidence, plaintiff, that this is the only safe way to do it? That basically, if you don't provide a tarping station, then you Plaintiff counsel was not able to iterate it, and that's because it doesn't exist. Now, in the briefing, plaintiff said Judge Simon was making up facts. They weren't making up facts. It was rhetorical questions. He said also that they didn't interpret my facts in the light most favorable as he's required to do. That's also not true. Because if you read the actual expert affidavit, it doesn't say tarping stations are the standard. It says tarping stations are the standard, and it says otherwise he has to get up on the load. What it doesn't say is, and there is no other practical means to do it besides the way he did it. It would have been just that simple to have the affidavit say that or have Mr. Gibson testify. There is no other practical way. But the judge, Judge Simon spotted it and he said, what about a ladder? Isn't there a device that might be in the market where it will assist you in doing this and you don't have to get up on the load? There's no evidence. As the move ‑‑ I move for summary judgment. They have to come forward with that evidence that says, yes, indeed, these are the only two choices, the binary choice. They came back with the affidavit from the industry expert. Correct. But the affidavit ‑‑ because it does not say there is no other way to do it. All he has to do is create a genuine factual dispute. Well, Your Honor, if you ‑‑ Wasn't ‑‑ wasn't he told how to tarp the load? Your Honor, the evidence does not support that. There is ‑‑ actually, the evidence is that defendant specifically declined to instruct him how to tarp the load beyond the finished product. They told him what they wanted. Well, yes, Your Honor, but that's like the finished product in Brown v. Boise Cascade where they simply said, I want a room painted. They didn't leave it up to him. They said, this is what ‑‑ this is the way we want it. And under certain conditions, we want part of the load exposed. And so he complied with their request. And isn't that part of what happened? Your Honor, that doesn't mean control. It doesn't mean the manner and means of control. I don't know what the problem is to send the matter back to the ‑‑ to Judge Simon, and who did a good job. But he wasn't aware of Spain v. Jones, which came out later. Let me try and make another distinction. That case seems to me to be more concerned about the fact that the judge was not aware of the safety of the truck driver who's doing all the labor and the work and who's got all this load, which can be unstable, across the United States. So I don't ‑‑ what's the problem to sending it back to the judge and asking him to take another look at the matter in light of Spain v. Jones? Because, Your Honor, I don't think that Spain ‑‑ Spain is not helpful and won't change the outcome. No, I found it helpful in looking at this case. Let me try and make a distinction with Spain in this case, Your Honor. In Spain, the plaintiff in that case was required to be in a hazardous situation. The evidence was clearly in that case that in order to perform his work, the general contractor or the defendant required him to go on that second floor and be near that hazardous hole. This case is different because there's no evidence that why he required him to get up on that load of onions. So how was he going to do it? Your Honor, the problem is that plaintiff presented no evidence that that was the only way to do it. So he's the only guy there. Your Honor, there's no ‑‑ Big, heavy tarp. Yes, Your Honor, but there's ‑‑ Tell them they want a tarp, and they tell them when they want it on tarp. Your Honor, the problem is that when you're on a load like that, it's unstable. He's supposed to be bringing the loading, the tarping, full tarping equipment with him. He carried it all in his truck. He did what they wanted him to do. And when you're on a load like that, it's unstable. You ever worked on a truck? Yes, Your Honor, I have. Your Honor, the issue is the fact that they didn't control the manner or means. In order for this Court to find that Judge Simon was correct, that they didn't control the manner and means, then the Court has to find that there was no other way to do it than the way he did it. What you have to say is there's no factual dispute about whether they controlled the manner and means. And there is no ‑‑ I think ‑‑ And the fact that they had to leave, he couldn't leave the yard without it being, the tarping being approved. I can't hear, though. Are you saying, Judge Fragerson, that so he didn't have to prove his case on summary judgment? No, you're looking frustrated. But, you know, we deal with summary judgment a lot. Excuse me, Your Honor. I dealt with summary judgment extensively in the district court all the time. And district court judges nowadays like to get rid of cases on summary judgment if they can. That's right. It doesn't take much to defeat a motion for summary judgment if it's done properly. Right? That's correct, Your Honor. Any good lawyer can produce evidence that will defeat summary judgment. And it didn't take ‑‑ here, the question is whether or not there's a genuine factual dispute over the question of control. That's all ‑‑ that is one of the key parts of their claim under the employer liability statute. Right? Yes, Your Honor. And all I would add ‑‑ They don't have to prove their case on summary judgment, maybe a weak case. They don't have to prove it. They don't have to show we're going to win if we go to trial. They just have to raise a genuine factual dispute. And I would say, Your Honor, that they didn't raise it. Judge Simon worked hard at trying to get trial counsel to tell him why is there a factual dispute. There isn't evidence. Celotex says plaintiff has to come forward with that specific evidence, and plaintiff failed. So in your mind, the fact that they loaded ‑‑ they had to load the onions at the yard or whatever. I don't know what this place is called. They loaded ‑‑ somebody put the onions on the truck, right? That's correct, yes. And put it on the truck. Loaded up the truck, right? He couldn't leave the yard unless it was loaded. Loaded properly and tarped properly. Correct. Right? It had to get approved. He couldn't leave any place. Correct. Right? And, in fact, he had to pull ‑‑ didn't he have to pull his truck away from the loading station? Correct. And he had ‑‑ and it was some other area where he had to do the tarping. Is that right? That's correct. Then he produces the affidavit from the expert that a tarping station would be a reasonable way of tarping the load. That's correct. Correct? And that's industry custom, he says. That's correct. So why doesn't that all add up to a disputed fact? Why does that? Why does that? Why doesn't he put that all together? Your Honor, because there's no evidence of control. There's no evidence that he controlled the manner or means. And I don't ‑‑ Suppose that they had said, we don't like the way this truck is tarped. You can't leave. You're just not going any place. It's almost like, I would say, Boise, Brown ‑‑ Are they going to dump the load out of the truck and say, well, it's not tarped properly? There is evidence that they required re‑tarping, yes. But I would say it's like Brown v. He had to have it ‑‑ it had to be properly tarped before he could leave. It's like Brown v. Boise Cascade. If they weren't satisfied with the painting, they don't get paid. I don't see how requiring an end result means under the ELL you control the manner and means. The question is completely different about how it's done, like in Woodbury, where Woodbury, the defendant and the plaintiff were working together, deciding about safety issues, about fall protection. The defendant was in on how it was done, the risk‑producing activity was done. Boise is totally different. They said, go paint the room and had no further input. Under these circumstances, there's no question of fact. All right. Thank you, Your Honor. I think I understand your argument. I'd like to just address a couple points that my opposing counsel mentioned. Please. Thank you, Your Honor. First, opposing counsel was mentioning that this case is just like Brown, and I'd just like to take a moment to say why this case is not like Brown v. Boise Cascade. In Brown, the court stated that the reason why plaintiffs or the fatal deficiency in plaintiff's argument was that plaintiff's direct employer and plaintiff's direct employer alone made the choice to use less safe equipment in that case. And here, there just simply was not a choice to not get up on the top of the load of onions, as for the reasons that I discussed earlier. In Brown, the employer was on site with plaintiff. It was a painting contractor and had the safety equipment of a scaffold in that case and simply chose not to use a scaffold, chose to use a ladder instead. In that case, there was evidence that the employer had asked the defendant to move some equipment in another room, and the defendant had done so. There was some equipment in the way in this room, and defendant chose not to ask the defendant to move that equipment. So the court said that the defendant had no control over the method and manner of work because defendant did not ask the, or the direct employer did not ask defendant to move that equipment. Therefore, defendant was not, or the employer was not precluded from using the safety equipment. And those facts just simply aren't present in this case. And then also, I think opposing counsel has not adequately distinguished Spain. The scope of the work in Spain was also working at height because the plaintiff was required to walk across this hallway as part of the scope of the work. And here there's just no dispute that plaintiff was required to get on top of this load of onions. And the parties actually agreed that working at height on top of this load of onions was the risk-producing activity in this case because there is no dispute regarding that, then the risk-producing activity is working at height and there's no distinguishing Spain on that grounds. Just one more question. Sure. Well, Judge Watford has a question. Sure. Just one last question about the deposition testimony of this alternative method of tarping where you load half, you put half the load on, you tarp. Why isn't that evidence that there was another way that your client wasn't forced to do it in the way that he did and got hurt? Well, defendant actually had control over that portion of doing it differently. There's testimony in the record at ER 76 that defendant sometimes places the tarps in sections and didn't do so in this case. Defendant testified that they do that so that the truckers don't have to wrangle the tarps over the load. And there's testimony. It's not clear why they didn't do that in this case. It's unclear in the record why that is so. But they didn't do it in sections in this case. Defendant, I think, had control over that part of the loading process. Thank you, Your Honors. Okay.  We appreciate your arguments in this case. The matter is submitted.
judges: PREGERSON, PAEZ, WATFORD